UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Ralph Holder

    v.                                    Civil No. 08-cv-197-JL
                                          Opinion No. 2009 DNH 110

Town of Newton *et al.*

**O R D E R**

This civil rights action involves the constitutional dimensions of pretrial detention and bail, as well as the pleading requirements in § 1983 case against municipalities. Ralph Holder has sued the towns of Newton and East Kingston, their police chiefs, certain of their police officers, the Rockingham County Department of Corrections, and its superintendent, alleging a number of constitutional violations and common-law torts arising out of his arrest, detention, and prosecution on a simple assault charge that was ultimately dismissed. Two of the defendants, the Rockingham County Department of Corrections and its superintendent, Albert J. Wright (the "county defendants") moved to dismiss Holder's constitutional claims against them, arguing that they fail to state a claim for relief. See Fed. R. Civ. P. 12(b)(6).[1] In

---

[1] Because the county defendants submitted an answer to the complaint before moving to dismiss it, their motion is properly treated as a motion for judgment on the pleadings under Rule 12(c). The distinction, however, is largely academic, as Rule

particular, the county defendants argue that (1) their continued detention of Holder, even after he had allegedly been determined to be eligible for release on bail, was not unconstitutional and (2) Holder has not pled any policy or practice of deliberate indifference to medical needs sufficient to establish a constitutional claim for the county defendants' allegedly depriving him of access to his prescription medications.

This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 1367 (supplemental jurisdiction). After oral argument, the motion to dismiss is granted in part and denied in part.[2] There is ample authority that the Constitution

---

12(b)(6) and Rule 12(c) impose identical standards. See, e.g., Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008). Furthermore, while Holder has since filed an amended complaint as ordered by this court at the preliminary pretrial conference, the amendment, as contemplated by the order, simply specifies which of the defendants are named to each count without changing the substance of the allegations at all. So the court has treated the motion to dismiss as directed at the amended complaint. See Hall v. Brooks, 2009 DNH 015, 2 n.2, appeal docketed, No. 09-1594 (1st Cir. Apr. 24, 2009). Holder, moved to strike the motion to dismiss as an improperly supported motion for summary judgment. While that relief has been denied, the court has treated the motion to strike as an objection to the motion to dismiss.

[2]The county defendants also filed a "supplemental motion to dismiss," joining in a motion to dismiss filed by other defendants that was based on Holder's failure to make initial disclosures in a timely fashion. That motion, as filed by the other defendants, was denied by margin order of March 25, 2009. The county defendants' request for the same relief is now denied for the same reasons.

prohibits "overdetention" of the kind the court understands Holder to allege. But Holder has not alleged adequate facts to support his other claim: that the county defendants were deliberately indifferent to his medical needs as the result of their policy or practice. So while his complaint states an overdetention claim for which relief can be granted, the medical care claim is dismissed.

## I. Applicable legal standard

To state a claim for relief, a complaint must set forth "[f]actual allegations [that are] enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. By the same token, the showing does not require "detailed factual allegations," id., simply "enough factual matter (taken as true) to suggest" the plaintiff's right to relief. Id. at 556.

**II. Background**

Following Holder's arrest by local police in May 2005, he was detained in the Rockingham County House of Corrections. Holder alleges that "after the Bail Commissioner was informed of the charges and determined that [Holder] was eligible for and entitled to release on personal recognizance," the county defendants "intentionally denied him prompt release, holding him for an additional nine hours on the pretext of a purported policy" that "prohibit[ed] the release of protective custody detainees without a ride." Holder alleges he was not in protective custody but, even if he had been, "he could have called a cab or otherwise obtained a ride." Holder also alleges that he "told officers at intake that he was insulin dependant and hypertensive," but that he was nevertheless deprived of his prescription medications for his whole nine-hour detention.

**III. Analysis**

**A.   Claim for denial of release**

As clarified by the recent amendment, see note 1, supra, Holder's complaint asserts a claim against the county defendants under 42 U.S.C. § 1983, alleging that they "deprived [him] of his constitutionally and statutorily protected right to reasonable and prompt bail . . . in violation of Part I, Articles 15 and 33

of the New Hampshire Constitution as well as the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution." In moving to dismiss this claim, the county defendants argue that the federal Constitution "contains no right to immediate release after bail" but, even if it did, that right could not have been violated by Holder's claimed nine-hour detention as a matter of law.[3] That is not correct.

"There is a substantial body of law in support of the proposition that a plaintiff who alleges overdetention, sometimes even for a very short period, states a claim for constitutional violations." Barnes v. District of Columbia, 242 F.R.D. 113, 117 (D.D.C. 2007) (citing cases); see also, e.g., Berry v. Baca, 379 F.3d 764, (9th Cir. 2004); Davis v. Hall, 375 F.3d 703, 714 (8th Cir. 2004); Lewis v. O'Grady, 853 F.2d 1366, 1370 (7th Cir. 1988); Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980). In this context, "overdetention" means simply that the plaintiff has

---

[3]The county defendants also argue that the New Hampshire constitution likewise confers no such right but that, even if it did, the right would not be enforceable through a § 1983 action. The court need not reach the first of these arguments, because the second one is correct. Section 1983 provides a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States, not the States, so the alleged violations of the New Hampshire constitution (or other state law) cannot support Holder's § 1983 claim. See Ortega Cabrera v. Municipality of Bayamon, 562 F.2d 91, 102 (1st Cir. 1977).

been imprisoned by the defendant for longer than legally authorized, whether because the plaintiff's incarcerative sentence has expired or otherwise.  See, e.g., Davis, 375 F.3d at 714 (citing cases).  A number of cases, in fact, have recognized that a constitutional claim can arise from the continued detention of the plaintiff after he has been granted release on bail.  See, e.g., Golberg v. Hennepin County, 417 F.3d 808, 810-11 (8th Cir. 2005); Barnes, 242 F.R.D. at 117-18; West v. Tillman, No. 04-100, 2006 WL 2052520, at *7 (S.D. Ala. Jul. 21, 2006); Parilla v. Eslinger, No. 05-850, 2005 WL 3288760, at *6-*7 (M.D. Fla. Dec. 5, 2005); Powell v. Barrett, 376 F. Supp. 2d 1340, 1350-51 (N.D. Ga. 2005), rev'd on other grounds, 246 Fed. Appx. 615 (11th Cir. 2007); accord Doyle v. Elsea, 658 F.2d 512, 516 n.6 (7th Cir. 1981) ("the constitutional liberty interest in release on bail arises after a magistrate has determined that an accused may be released upon deposit of whatever sum of money will ensure the accused's appearance for trial").

To be sure, these authorities differ on the source of the constitutional right at issue:  some locate it in the due process clause of the Fourteenth Amendment, while others locate it in the cruel and unusual punishments clause of the Eighth Amendment.  See Lemarr v. Doe, No. 05-167, 2008 WL 2078159, at *4-*5 (S.D. Tex. May 15, 2008) (discussing divergent authority).  Because the

Fourteenth Amendment, rather than the Eighth Amendment, provides for the rights of pre-trial detainees--as opposed to convicted prisoners--in state or local custody, see <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002), the Fourteenth Amendment would appear to provide the source of the right here.  Resolving that theoretical question, though, is not essential to deciding the county defendant's motion to dismiss.  It is enough to recognize, as one court has, that where "[d]efendants are alleged to have simply refused to release the plaintiff[]--despite a court order to do so--pursuant to an official policy, practice, or custom," a constitutional violation has "obviously" been stated, at least if the refusal remains "unjustified."  <u>Parilla</u>, 2005 WL 3288760, at *7.

The county defendants' contrary view depends entirely on the Supreme Court's decision in <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), and a decision by the court of appeals following it, <u>Brady v. Dill</u>, 187 F.3d 104 (1st Cir. 1999).  The plaintiff in each of those cases had been detained on a warrant bearing his name, but protested his innocence--rightly, as it turned out, because the warrant had issued due to another person's falsely claiming to be the plaintiff during a prior arrest.  <u>Baker</u>, 443 U.S. at 140-41; <u>Brady</u>, 187 F.3d at 106-07.  Though each of the plaintiffs was ultimately released after the fraud was uncovered,

he claimed that the intervening period of detention violated his constitutional rights.  Baker, 443 U.S. at 144; Brady, 187 F.3d at 108-109.  The plaintiff in Baker claimed that "despite his protests of mistaken identity, he was detained" for a period until "the validity of his protests was ascertained."  443 U.S. at 144.  The plaintiff in Brady claimed that, in contrast, he was detained even after the defendants came to realize that his protests were valid, 187 F.3d at 109; he was set free only after they secured his appearance before a judge, who ordered the plaintiff's release, id. at 107.

Both claims were rejected.  The Supreme Court ruled that, while "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty without due process of law, . . . a detention of three days over a . . . weekend does not and could not amount to such a deprivation." Baker, 443 U.S. at 145 (internal quotation marks and ellipse omitted).  And the court of appeals ruled that "it would take circumstances much more egregious . . . to conclude that a weekend detention of approximately thirty-six hours, accompanied by a concerted effort on the part of the police to secure the detainee's release, resulted in a wrong of constitutional

dimensions."[4] Brady, 187 F.3d at 109. Neither Baker nor Brady, then, considered the constitutional implications of keeping a person in custody for any particular length of time <u>after he has been granted bail</u>.

The cases' reasoning, moreover, strongly suggests that overdetention of the sort alleged here raises entirely different considerations: each decision relied heavily on the notion that our constitutional system places responsibility for releasing a detainee on the judicial system, rather than on law enforcement officers who have accomplished the detention pursuant to a valid warrant. Baker, 443 U.S. at 146; Brady, 187 F.3d at 111-14. So Baker, and cases like Brady that follow it, essentially present the converse of the case here, where a judicial officer determines that a detainee should be released, but law enforcement personnel continue to hold him anyway. Indeed, a number of the courts of appeals have found Baker inapposite in this context. See Davis, 375 F.3d at 716-18; Douthit, 619 F.2d at 532; see also Cannon v. Macon County, 1 F.3d 1558, 1562 (11th Cir. 1993) ("The Baker decision has not been read to preclude all

---

[4]Significantly, this "concerted effort" included summoning a bail commissioner, who offered to release the plaintiff on his own recognizance. 187 F.3d at 107. The plaintiff refused, fearing that agreeing to appear to answer the charge would in some way legitimate it. Id.

§ 1983 claims based on false imprisonment"); Coleman v. Frantz, 754 F.2d 719, 724 (7th Cir. 1985) (distinguishing Baker in part because, there, the plaintiff's detention "could only have been prevented by the institution of significant and burdensome investigative procedures," rather than by judicial intervention).

Two further points of clarification are necessary. First, the court has assumed that this is in fact the nature of Holder's claim, i.e., that the bail commissioner effectively ordered his release on his own recognizance but the county defendants nevertheless continued to hold him in accord with the purported dictates of one of their policies.[5] While this is certainly one plausible reading of the complaint, another plausible reading--at least in light of additional statements in Holder's motion to strike--is that the county defendants learned, through contact with the bail commissioner on the night of Holder's arrest, that he would be eligible for release on his own recognizance, but that, for reasons that are not yet clear, the bail commissioner did not in fact order Holder's release until the next morning.

---

[5]At oral argument, the county defendants disputed that the amended complaint fairly alleged such a claim, but the court disagrees.  In any event, the county defendants' motion rests on the assumption that this is the nature of Holder's claim; hence their argument that the Constitution "contains no right to immediate release after bail" (emphasis added).

10

Whether that amounts to a violation of Holder's constitutional rights would seem to present a different question from the one just considered. Furthermore, the answer could potentially implicate Brady, on the theory that jailers who know their prisoner is eligible for release on yet to be granted bail have no more constitutional duty to arrange a bail hearing immediately than police who know that their arrestee is not the man named in the warrant have to arrange his release.

It is sufficient at the moment, though, to reject the county defendants' argument that "complaints regarding delayed detentions must be based on detentions of 48 hours, at a minimum" to state a constitutional claim, even though the period of delay follows a release on bail. Indeed, one court of appeals has held that "even a thirty-minute detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment." Davis, 375 F.3d at 713 (citing Young v. City of Little Rock, 249 F.3d 730 (8th Cir. 2001) (upholding verdict against defendant on claim that its thirty-minute delay in carrying out a judge's order to release plaintiff violated her Fourteenth Amendment rights)). If further factual development reveals that Holder was not "ordered released" by the bail commissioner until the morning after the arrest, then the court can consider whether the county defendants' alleged role in

that delay transgresses the constitution. Cf. Wagenmann v. Adams, 829 F.2d 196, 212 (1st Cir. 1987) (upholding verdict against arresting officer on excessive bail claim, despite his lack of authority to set bail, in light of officer's "helping to shape, and exercising significant influence over, the bail decision" by the commissioner). But again, for now, the court does not understand Holder to be making such a claim, which is all that matters on a motion to dismiss.

That brings the court to the second point of clarification: the Constitution does not invariably require the "immediate" release of a prisoner pursuant to a bail or other judicial order for his release. As one court has recognized:

> administrative tasks incident to the release of a prisoner from custody may require some time to accomplish . . . . Reasonable time must be allowed for such matters as transportation, identity verification, and processing. It is virtually impossible to establish an absolute minimum time to meet all potential circumstances which might exist.

Lewis, 853 F.2d at 1370; see also Berry, 379 F.3d at 771-73.

Thus, there may be some merit to the county defendants' assertion that they did not violate the constitution by retaining custody over Holder "for nine hours overnight, when [he] would otherwise be released to rural roadways in the dark, many miles from home," even if he had been determined to be eligible for

that delay transgresses the constitution. Cf. Wagenmann v. Adams, 829 F.2d 196, 212 (1st Cir. 1987) (upholding verdict against arresting officer on excessive bail claim, despite his lack of authority to set bail, in light of officer's "helping to shape, and exercising significant influence over, the bail decision" by the commissioner). But again, for now, the court does not understand Holder to be making such a claim, which is all that matters on a motion to dismiss.

That brings the court to the second point of clarification: the Constitution does not invariably require the "immediate" release of a prisoner pursuant to a bail or other judicial order for his release. As one court has recognized:

> administrative tasks incident to the release of a prisoner from custody may require some time to accomplish . . . . Reasonable time must be allowed for such matters as transportation, identity verification, and processing. It is virtually impossible to establish an absolute minimum time to meet all potential circumstances which might exist.

Lewis, 853 F.2d at 1370; see also Berry, 379 F.3d at 771-73.

Thus, there may be some merit to the county defendants' assertion that they did not violate the constitution by retaining custody over Holder "for nine hours overnight, when [he] would otherwise be released to rural roadways in the dark, many miles from home," even if he had been determined to be eligible for

release on his own recognizance.[6]  Assessing this claim, however, would require the court to consider facts that, as Holder points out in his motion to strike, have not been pled in the complaint and, for that matter, seem to contradict its allegations that he could have arranged for a ride if necessary.  So that argument, like any argument that Holder was in fact not even granted bail until the morning, must await disposition in a different procedural context.  See, e.g., Fed. R. Civ. P. 55, 56.

---

[6]The county defendants make this point as part of Superintendent Wright's argument for dismissal of the claims against him on qualified immunity grounds.  The complaint makes clear, however, that Wright has been sued only in his official capacity, not his individual capacity.  He therefore cannot claim qualified immunity, because the suit against him is the equivalent of a suit against the Rockingham County Department of Corrections, see Hafer v. Melo, 502 U.S. 21, 26 (1991), which, as the county defendants recognize, cannot claim qualified immunity. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993).  When the fact that Wright has been sued only in his official capacity was pointed out at oral argument, the county defendants asked that he be dismissed from the case, on the theory that he should not be named in an action brought only against the Department of Corrections.  It is not uncommon, though, for the same suit to name both a government agency and one or more of its officers in their official capacity as defendants; doing so ensures that, among other advantages, the officers are treated as parties for purposes of discovery, subject to, e.g., requests for admission, interrogatories, and the substantive use of their depositions at trial in the way not permitted as to non-parties.  The court declines to dismiss Superintendent Wright.

**B.    Claim for denial of medical care**

The county defendants also seek dismissal of Holder's claim that he was denied his prescription medications during his nine-hour detention, even though he told officers at intake of his need for those medications.  The county defendants argue that the complaint does not adequately allege that this claimed constitutional violation resulted from any policy or custom of the department of corrections, as would be necessary to establish their liability for it.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  As the county defendants point out, § 1983 does not make municipalities, including counties and their agencies, liable for the actions of their employees under respondeat superior principles.[7]  Leatherman, 507 U.S. at 166.

In contrast to its allegations that, even after Holder was granted bail, the county defendants continued to hold him as a result of a purported correctional policy, the complaint does not fairly suggest that such a policy was the reason they allegedly deprived him of his medication.  Though the complaint here and there invokes the county's "customs and usages," these vague

---

[7]The county defendants argue that Wright is likewise not responsible for the officers' alleged actions, absent some indication of a more significant role in them.  Again, however, the complaint does not even purport to sue Wright in his individual capacity, so the court need not consider whether such a claim has been adequately stated.

14

references--unaccompanied by any allegations explaining what these "customs and usages" are or linking them to the claimed denial of medical care--are the sort of "labels and conclusions" insufficient on their own to survive a motion to dismiss. Twombly, 550 U.S. at 555.

Furthermore, though the amended complaint specifically names the county defendants in its claims of negligent hiring, retention, training, and supervision, there is likewise nothing linking those omissions to the alleged denial of medical care.[8] In any event, a municipality's simple negligence in the training and the like of its employees does not amount to a constitutional violation, as the county defendants point out. See City of Canton v. Harris, 489 U.S. 378, 392 (1989). The complaint therefore fails to state a claim that the county defendants violated Holder's federal constitutional rights by denying him access to his medications.

---

[8]There is an allegation, buried among those set forth in support of a count entitled "Negligence in Performance of Duties," that the Department of Corrections "negligently continued plaintiff's wrongful detention and deprived him of necessary medical care." Putting aside the problem that there is nothing linking the Department to this alleged negligence aside from the actions of its employees, which is insufficient as just discussed, mere negligence in failing to provide necessary medical care does not amount to a constitutional violation anyway. See Mahan v. Plymouth County House of Corrs., 64 F.3d 14, 17 (1st Cir. 1995)

### III. Conclusion

For the foregoing reasons, the county defendants' motion to dismiss[9] is GRANTED as to the § 1983 claim arising out of the alleged denial of medical care but DENIED as to the § 1983 claim arising out of the alleged denial of release on bail.  The county defendants' supplemental motion to dismiss[10] is also DENIED.  See note 2, supra.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 23, 2009

cc:  Sven D. Wiberg, Esq.
     Brian J. S. Cullen, Esq.
     Charles P. Bauer, Esq.
     Jeanne P. Herrick, Esq.
     Corey M. Belobrow, Esq.

---

[9] Document no. 20.

[10] Document no. 22.